IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LINDA CHAMPION                                                                                    PLAINTIFF

VS.                                           CASE NO. 05-CV-1008

HUDSON MEMORIAL NURSING HOME;
MERVIN MAST, Individually and in his
Official Capacity as Administrator; and
DEBBIE KING, Individually and in her
Official Capacity                                                                                 DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of the Defendants, Hudson Memorial Nursing Home, Mervin Mast and Debbie King. (Doc. No. 26). The Plaintiff, Linda Champion, has responded. (Doc. No. 36). The Court finds the matter ripe for consideration.

### BACKGROUND[1]

Linda Champion was hired by Hudson Memorial Nursing Home, a county-run nursing home, as a Certified Nurse Assistant (CNA) in July 1997. For the majority of her employment, Champion worked the 11:00 p.m. to 7 a.m. shift. On September 30, 2004, as she was clocking out, Champion was told to report to Debbie King's office. Upon entering the office, Champion was questioned by Debbie King, the Director of Nursing, and Bill Yutzy, the Assistant Administrator, about a soiled underpad that had been improperly disposed of and found in the

---

[1] The parties' versions of the events leading up to this lawsuit differ. As this matter is before the Court on a Motion for Summary Judgment, the facts will be viewed in the light most favorable to the nonmoving party, Linda Champion.

laundry room. Champion denied having anything to do with the improper disposal of the soiled underpad or having any knowledge of it. The questioning was confrontational and threatening, and the discussion became very heated. At this point, Bill Yutzy became enraged and yelled at Champion, telling her that if there was another incident she would be gone. Champion then left to take her children to school. Champion was not scheduled to return to work until Monday, October 4, 2004. On that Monday, Champion called in sick and said she would not be in until she could see a doctor. Then on October 5th or 6th, Champion heard from several sources that Debbie King had fired her. After hearing this rumor, Champion did not return to work.[2]

On December 6, 2004, Champion filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination against Hudson. On December 13, 2004, Champion received a Right to Sue Letter from the EEOC.

On January 27, 2005, Champion filed this action against Hudson Memorial Nursing Home, Mervin Mast, individually and in his official capacity as Administrator, and Debbie King, individually and in her official capacity (hereinafter referred to as "Defendants"). In the suit, Champion claims that she was discriminated against because of her race in violation of Title VII

---

[2] The Defendants' version of the incident and what followed differs. They claim that when they questioned Champion about the soiled underpad she became very upset, raised her voice and wanted to blame others. They advised her that they were not blaming anyone but were just trying to find out what happened. Champion continued to say that she did not do it, stormed out of the office and refused to come back. Champion was never disciplined regarding this incident. Champion worked the next two nights, was off two nights, and then called in sick on October 4th. Champion was scheduled to work on October 5, 6, 8 and 9. She did not call in or report to work on any of these nights. Debbie King tried to contact Champion during this time to see if she was coming to work. Finally on October 10, Champion was taken off the schedule because it was assumed she had quit. Defendants claim that there was never any recommendation made to fire Champion, nor any discussion of it among the administrative staff. They claim that Champion was not fired by the Defendant, rather, she quit her job.

of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000(e), et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202, and the Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq. The matter is now before the Court on the Defendants' Motion for Summary Judgement.

STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide the following. When a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

## DISCUSSION

In this case, Champion alleges she was discriminated against by the Defendants on the basis of race when she was falsely accused of leaving a resident's soiled underpad in the laundry room and later terminated by Defendants. She claims that these actions violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000(e), et seq. ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202, and the Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101, et seq.

*Champion's Title VII Claim*

In employment discrimination cases under Title VII, the Supreme Court has long applied the familiar three-step burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 41 U.S. 792, 93 S.Ct. 1817, 36 L.ED.2d 668.[3] Under *McDonnell Douglas,* the plaintiff must first

---

[3] Claims under §1981, §1983 and the ACRA are analyzed using the same burden-shifting framework as Title VII claims. *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n.2 (8th Cir. 2003)(applying *McDonnell Douglas* to §1981 claim); *Ottman v. City of*

4

establish a *prima facie* case of discrimination.  If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate non-discriminatory reason for the alleged discrimination.  If the defendant sets forth such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination.  If the plaintiff can not make out a *prima facie* case of discrimination, the claim must fail as a matter of law.

In order to establish her *prima facie* case of race discrimination, Champion must show 1) that she is a member of a protected class; 2) that she was meeting her employer's legitimate job expectations; 3) that she suffered an adverse employment action; and 4) that similarly situated individuals outside the protected class were treated differently.  *Jones v. Reliant Energy-ARKLA,* 336 F.3d 689, 691 (8th Cir. 2003).  To determine if Champion can make out her *prima facie* case, the Court must apply the evidence before it to the elements required for such a case.

First, Champion is an African American female.  Therefore, she is a member of a protected class and, thus, satisfies the first element of her *prima facie* case.

Second, Champion must be meeting the legitimate expectations of her employer.  In order to satisfy this element, Champion must show more than the ability to perform her job.  She must prove that she was actually performing it at a level that met Defendant's legitimate expectations.  *Whitley v. Peer Review Systems, Inc.,* 221 F.3d 1053, 1055 9 8th Cir. 2000).  Defendants claim that she was not meeting their legitimate expectations in that her work performance had

---

*Independence, Mo.,* 341 F.3d 751, 756 (8th Cir. 2003)(applying *McDonnell Douglas* to §1983 claim); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002) (applying *McDonnell Douglas* to ACRA claim).  Therefore, the Court's analysis of Champion's Title VII claim equally applies to her claims under §1981, §1983 and the ACRA.

progressively gotten worse.  However, Champion points to her September 9, 2004, evaluation in which she was rated above average in every category.  Therefore, the Court finds that Champion was meeting her employer's legitimate job expectations.  Thus, the second element of her *prima facie* is satisfied.

To satisfy the third element of her *prima facie* case, Champion must show that she suffered an adverse employment action at the hands of her employer.  An adverse employment action must have a materially adverse impact on the terms or conditions of a plaintiff's employment.  *Sowell v. Alumina Ceramics, Inc.,* 251 F.3d 678, 684 (8th Cir. 2001).  There must be a tangible change in working conditions that produced a material employment disadvantage. *Cooney, et al. v. Union Pacific Railroad, Co.,* 258 F.3d 731, 734 (8th Cir. 2001).  Termination, reduction in pay or benefits, and changes that affect an employee's future career prospects generally meet this standard.  *Spears v. Missouri Dep't of Corr. & Human Resources.,* 210 F.3d 850, 853 (8th Cir. 2000).  However, minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not meet this standard.  *Id,* (citing *Ledergerber v. Strangler,* 122 F.3d 1142, 1144 (8th Cir. 1997)).

Champion claims that she suffered an adverse employment action when she was falsely accused of improperly leaving a resident's soiled underpad in the laundry room and threatened that she would be gone if it happened again.  However, false accusations and threats of termination do not have a tangible effect upon the recipient's employment.  *See Brown v. Missouri State Highway Patrol,* 56 Fed.Appx. 282, 285 (8th Cir. 2003)(holding that false accusations do no rise to the level of a material employment disadvantage); *Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir. 2000)(holding that criticism and threats of termination do

not rise to the level of adverse employment action).  Therefore, they do not rise to the level of an adverse employment action and do not satisfy the third element of a plaintiff's *prima facie* case of discrimination.

Champion also claims that she suffered an adverse employment action when she was terminated by the Defendants.  It is undisputed that termination is an adverse employment action.  However, Champion has offered no evidence that she was actually fired by the Defendants.  The only proof presented by Champion that her employment was terminated is a rumor which she heard on October 5th or 6th that Debbie King had fired her.  However, the source of this information was not Mervin Mast, Hudson's Administrator, Bill Yutzy, Hudson's Assistant Administrator, Debbie King, Hudson's Director of Nursing or anyone with authority at Hudson.  Such a rumor is not proof that Champion was fired.  In fact, the evidence before the Court points to the contrary.  Champion was never told by any of the Defendants that her employment was terminated and her name remained on the work schedule until October 10th when it was finally removed after she failed to report to work or call in for four nights.  The evidence just does not support Champion's contention that she was fired by the Defendants.  Rather, it indicates that Champion voluntarily abandoned her job when she believed an unsubstantiated rumor and did not return to work.  Champion has failed to show that she suffered an adverse employment action at the hands of her employer; thus, she has failed to satisfy the third element of her *prima facie* case.[4]

---

[4] Even if Champion had established her *prima facie* case of discrimination, the Court feels that the same result would be reached.  Defendants have presented a legitimate, nondiscriminatory reason for Champion's removal from the work schedule, i.e. the belief that Champion had quit when she failed to call in or report to work for four nights.  Champion has not presented evidence that the Defendants' stated reason was merely a

Champion has failed to make out her *prima facie* case of race discrimination against the Defendants.  Therefore, the Court need not go beyond the first part of the *McDonnell Douglas'* three part process.  Champion's Title VII race discrimination claim must fail as a matter of law.  Therefore, the Defendants are entitled to summary judgment on Champion's Title VII claim.

*Champion's Claims under §1983, §1981 and ACRA*

Champion has also filed claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993.  Claims of employment discrimination based on race under these statutes are analyzed under the same standards developed in Title VII litigation.  *See Putman v. Unity Health Sys.,* 348 F.3d 732, 735 n.2 (8th Cir. 2003); *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 756 (8th Cir. 2003); *Crone v. United Parcel Serv., Inc.,* 301 F.3d 942, 945 (8th Cir. 2002).  Therefore, in light of the Court's ruling in regard to Champion's Title VII claim, her claims against the Defendants upon § 1981, § 1983 and the ACRA must also fail as a matter of law.  Thus, the Defendants are entitled to summary judgment on these claims.

## CONCLUSION

Based upon the foregoing reasons, the Court finds that the Defendants' Motion for Summary Judgment should be and hereby is **granted**.  A judgment of even date, consistent with this Opinion, will be issued.

IT IS SO ORDERED, this 23rd day of January, 2007.

                                          /s/Harry F. Barnes
                                    Hon. Harry F. Barnes
                                    United States District Judge

---

pretext for discrimination.